NOS. 17-15648, 17-15692, 17-15702, 17-15724, 17-16072

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

| | |
|---|---|
| JAMES PAGE,<br>Objector-Appellant, | No. 17-15648<br>N. Dist. Cal., San Francisco<br>D.C. No. 3:13-cv-04065<br>Hon. Vince Chhabria presiding |
| v. | |
| PATRICK COTTER, et al.,<br>on behalf of themselves and all<br>others similarly situated,<br>Plaintiff-Appellees | |
| and | |
| LYFT, INC.,<br>Defendant-Appellee | |

---

| | |
|---|---|
| CHRISTINE GAUSSOIN,<br>Objector-Appellant, | No. 17-15692<br>N. Dist. Cal., San Francisco<br>D.C. No. 3:13-cv-04065<br>Hon. Vince Chhabria presiding |
| v. | |
| PATRICK COTTER, et al.,<br>on behalf of themselves and all<br>others similarly situated,<br>Plaintiff-Appellees | |
| and | |
| LYFT, INC.,<br>Defendant-Appellee | |

---

STEVEN PRICE,
Objector-Appellant,

No. 17-15702
N. Dist. Cal., San Francisco
D.C. No. 3:13-cv-04065
Hon. Vince Chhabria presiding

       v.

PATRICK COTTER, et al.,
on behalf of themselves and all
others similarly situated,
Plaintiff-Appellees

    and

LYFT, INC.,
Defendant-Appellee

KERRY ANN SWEENEY,
Objector-Appellant,

No. 17-15724
N. Dist. Cal., San Francisco
D.C. No. 3:13-cv-04065
Hon. Vince Chhabria presiding

       v.

PATRICK COTTER, et al.,
on behalf of themselves and all
others similarly situated,
Plaintiff-Appellees

    and

LYFT, INC.,
Defendant-Appellee

ARCHIE OVERTON,
Appellant,

v.

PATRICK COTTER, et al.,
on behalf of themselves and all
others similarly situated,
Plaintiff-Appellees

and

LYFT, INC.,
Defendant-Appellee

No. 17-16072
N. Dist. Cal., San Francisco
D.C. No. 3:13-cv-04065
Hon. Vince Chhabria presiding

## MOTION TO CONSOLIDATE AND EXPEDITE APPEALS
## BY PLAINTIFF-APPELLEES PATRICK COTTER, ALEJANDRA MACIEL, AND JEFFREY KNUDTSON

Shannon Liss-Riordan
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02114
(617) 994-5800

Matthew D. Carlson
LICHTEN & LISS-RIORDAN, P.C.
466 Geary St., Suite 201
San Francisco, CA 94102
(415) 630-2651

*Counsel for Plaintiff-Appellees*

## MOTION TO CONSOLIDATE APPEALS

Pursuant to Fed. R. App. P. 3(b)(2), Plaintiff-Appellees Patrick Cotter, Alejandra Maciel, and Jeffrey Knudtson, on behalf of themselves and all similarly situated, respectfully move for consolidation of four appeals, filed by Objector-Appellants, of the District Court's Order Granting Final Approval of Settlement Agreement (Nos. 17-15648, 17-15692, 17-15702, and 17-15724), and one appeal (No. 17-16072) of the District Court's Order denying Appellant Archie Overton's Motions to Intervene and for Reconsideration (which were filed *after* the District Court's Final Approval Order and its Entry of Judgment) in *Cotter, et al. v. Lyft, Inc.*, No. 3:13-cv-04065 (N.D. Cal.).

Each of these appeals arises from the same District Court action. And each appeal seeks review of one or more orders in which the District Court approved (or rejected arguments for disapproving) a classwide settlement. Federal Rule of Appellate Procedure 3(b)(2) provides that, when multiple parties "have filed separate timely notices of appeal, the appeals may be joined or consolidated by the court of appeals." This rule "encourage[s] consolidation of appeals wherever feasible." Fed. R. App. P. 3, Advisory Committee Note. Consolidation is feasible and appropriate here because each appeal involves the same Appellees (the *Cotter* class representatives and Lyft, Inc.) and raises related issues regarding whether the District Court acted appropriately in approving a classwide settlement. *See, e.g.,*

1

*Gerritsen v. City of Los Angeles*, 994 F.2d 570, 572 (9th Cir. 1993) (consolidation appropriate where appeals "raise similar issues and involve many of the same defendants").

*Cotter* was filed in September 2013, alleging that Lyft drivers in California had been misclassified as independent contractors and were owed, *inter alia*, reimbursement for work related expenses (*e.g.,* mileage expenses), withheld gratuities, and penalties pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA"). After substantial written discovery and multiple depositions, Plaintiffs defeated Lyft's motion for summary judgment. *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067 (N.D. Cal. 2015). Following the District Court's summary judgment order, the Court suggested that the parties attempt to mediate this dispute, which, with the assistance of Magistrate Judge Ryu, ultimately led to approval of a classwide settlement including the payment of $27,000,000, plus non-monetary benefits. The settlement was reached in light of the value of the case weighed against the risks of further litigation – most notably the risks posed by Lyft's arbitration provision and a jury trial on the misclassification issue. The approval process was long and rigorous, spanning more than one year, and entailed substantial supplemental briefing and multiple hearings – *none* of which Appellants attended.

2

Consolidating the appeals that have now been filed will promote judicial economy by avoiding duplicative briefing and argument and by allowing a single panel of this Court to address the various objections to the settlement at once. Appeals by Objector-Appellants James Page (No. 17-15648), Christine Gaussoin (17-15692), Steven Price (No. 17-15702), and Kerry Ann Sweeney (No. 17-15724) each challenge the District Court's final approval order and involve overlapping issues which can be and should be addressed in consolidated briefing and at one consolidated hearing. The appeal by *pro se* Appellant Archie Overton (No. 17-16072), who did not object to the settlement, raises issues marginally related to the approval of the settlement (and any of the litigation in this case), but which nonetheless should be addressed in connection with the other appeals so that this case can finally be resolved in the most efficient manner possible.

Plaintiff-Appellees submit that consolidation of these appeals is feasible and will substantially increase efficiency for the Court and the parties, and is therefore in the interests of justice. *See United States v. Washington*, 573 F.2d 1121, 1123 (9th Cir. 1978).

## MOTION TO EXPEDITE APPEALS

Plaintiff-Appellees also ask the Court to expedite resolution of these appeals under Circuit Rule 27-12. Good cause for expedition exists because: (1) as discussed briefly below, the appeals are meritless; (2) as also discussed below, it

3

appears the objector-appeals are motivated by questionable objectives, and Mr. Overton's appeal is based on a misunderstanding of what was actually decided by the District Court; and (3) the appeals are currently holding up payments – and in many cases significant payments – to nearly 100,000 class members who have already submitted claims to receive their share of the settlement, and who are inquiring on a daily basis about when they can receive their settlement payments.

This is not a consumer or antitrust settlement where a massive class is awaiting minimal payments or coupons. Legions of Lyft drivers, many of whom are entitled to thousands of dollars under the Settlement Agreement, have their payments held hostage by these baseless appeals. The Settlement Administrator and Plaintiffs' counsel have been inundated by calls and emails from drivers inquiring about when they can expect to receive their payments, and many drivers have expressed how upset they are by this delay.

Plaintiff-Appellees urge the Court to minimize further prejudice to class members caused by these appeals by resolving them as soon as possible so Lyft drivers can finally benefit from a hard-fought settlement in a high-risk case.

*\*\**

While Plaintiff-Appellees do not believe it necessary to delve into detail regarding the merits of Appellants' arguments in this motion, they do believe it is

4

important for the Court to have a flavor of what is holding up a $27 million settlement so the Court may take action to resolve these appeals expeditiously.

## A.    Steven Price's Appeal

Steven Price is the plaintiff in a copycat class action against Lyft filed nine months after this case in Los Angeles Superior Court, *Price v. Lyft, Inc.*, Case No. BC548636 (L.A. Sup. Ct.).  During the litigation, Plaintiff-Appellees asked the District Court to enjoin further litigation in *Price*, primarily on grounds that *Price* posed a threat to the integrity of the District Court's summary judgment order – *i.e.* the risk that Lyft could attempt to use the *Price* action to get a "second bite at the apple" to obtain summary judgment on the drivers' misclassification claims. *See* Dkt. No. 118. The District Court elected to defer to the state court's decision on whether the *Price* case should proceed, *see* Dkt. No. 129, and subsequently the state court chose to stay *Price* in deference to the developments in the District Court.[1]

---

[1]    At the hearing on Plaintiff-Appellees' Motion to Enjoin the *Price* case, Plaintiff-Appellees' counsel expressed concern over the *Price* plaintiffs' lawyers' intentions, a skepticism shared by the Court. *See* **Exhibit 1** (excerpts from the transcript of proceedings re: Motion to Enjoin at 3:17-24 (The Court: "I am concerned about the plaintiff's lawyers in the *Price* action are putting their own financial interests ahead of the interests of the people they propose to represent. Because I cannot figure out, given the posture that this case is currently in, what benefit they could derive for the people they propose to represent by proceeding with their follow-on class action in state court."); 9:9-13 (The Court: "It appears that the attorneys who seek to represent the plaintiffs in the state court case do not have the best interests of the proposed class members at heart. It appears that they

Mr. Price has now appealed the District Court's approval of the settlement in this case on grounds that the settlement is undervalued. But the District Court applied tremendous scrutiny to the fairness of the amount offered in settlement by, *inter alia*, thoroughly reviewing counsel's valuation of claims and the percentage of that value represented by the monetary terms of the settlement, balanced against the risks of further litigation. Indeed, the District Court required supplemental briefing on this very issue. The District Court's claim-by-claim approach to assessing the reasonableness of the amount offered in settlement, balanced against the risks of continued litigation, is unquestionably sufficient under *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) (holding that one way a district court can properly assess the reasonableness of the amount offered in settlement is by weighing counsel's valuation of claims versus the amount offered in the settlement, which a district court can then consider in light of the risks of further litigation).

Mr. Price has also appealed on grounds that "separate counsel" (presumably his counsel) should have been appointed to negotiate the PAGA component of the settlement. But this novel argument finds no basis in the statute or the caselaw. Indeed, class cases are routinely settled in conjunction with the settlement of

have their financial interests at heart; that is, the financial interest of the plaintiff's lawyers."); 14:25-15:3 (The Court: "there are real concerns about whether the plaintiff's lawyers in the state court case really have the interests of the Lyft drivers at heart")).

PAGA claims, by the same counsel, and neither the Labor and Workforce Development Agency, nor this Court, have expressed any concern about this common practice. *See, e.g., Porter v. Nabors Drilling USA, L.P.*, 2017 WL 1404392, *2 (9th Cir. Apr. 20, 2017).

## B. Christine Gaussoin's Appeal

Christine Gaussoin is represented by attorney Michael F. Creamer. *See* Dkt. No. 307. Mr. Creamer has been sanctioned by a California Court of Appeal for "maintaining a frivolous appeal." *Hasso v. J & J Real Estate Holdings, LLC*, No. E054774, 2014 WL 6993079, at *5 (Cal. Ct. App. Dec. 11, 2014). He has also unsuccessfully represented objector-appellants in class settlement litigation, apparently asserting arguments similar to those he is making in this case. *See Roos v. Honeywell Int'l, Inc.*, 241 Cal. App. 4th 1472, 194 Cal. Rptr. 3d 735, 739 (2015) (rejecting Mr. Creamer's arguments regarding attorneys' fees and *cy pres* distribution).[2]

Ms. Gaussoin has appealed on various grounds, all of which are based on factual inaccuracies or are foreclosed by relevant case law. For example, Ms. Gaussoin has objected on grounds that the Class Notice did not tell Class Members how much money they would receive under the settlement. However, although it is

---

[2]    Mr. Creamer failed to sign the notice of appeal in this case. *See* Dkt. No. 317.

not specifically required that a class notice provide class members with an estimate of their individual recovery, *see CLRB Hanson Industries, LLC v. Weiss & Associates, PC*, 465 Fed. Appx. 617, 619 (9th Cir. 2012), Plaintiffs here *did* give class members a means to roughly estimate their class settlement shares. *See* Dkt. No. 294-1 at ¶ 7 (approved supplemental class notice describing how funds would be allocated to class members and informing class members of counsel's estimates that settlement shares would come to $1-2 per hour worked for most drivers and $2-4 per hour worked for drivers who worked frequently); *see also* Dkt. No. 206-2 at p. 20 (settlement distribution chart submitted with preliminary approval papers); *see also* Dkt. No. 271-01 at p. 29 (updated distribution chart submitted with final approval papers).

Ms. Gaussoin has also appealed on grounds that a claims process was improper. But Plaintiff-Appellees provided the District Court with the justification for the use of a claims process in a case like this, where there will be no reversion of funds: to ensure up-to-date bank account information for electronic distribution of funds and to permit Class Members to elect to receive payment by mail at a current address (and thus to maximize the chance of class members receiving their payments and to avoid administrative costs and lost payments that would result from settlements being sent to out-of-date addresses). There is ample Ninth Circuit authority permitting the use of a claims process in a class settlement. *See, e.g.*, *In*

8

*re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) (affirming district court approval of settlement agreement using claims process with no reversion of settlement funds to defendants).

Also indicative of the nature of Ms. Gaussoin's appeal is her argument that the Settlement Administrator's website did not include various legal documents for review (*e.g.*, the settlement agreement and Plaintiff-Appellees' Motion for Attorneys' Fees). Although the caselaw has not required such documents to be posted on a public website, these documents *were* in fact posted on the Settlement Administrator's website during an extended notice period and thus were easily available to class members.

## C.      Kerry Ann Sweeney's Appeal[3]

This is, at minimum, Ms. Sweeney's third appeal of a class settlement. *See Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, *7 (N.D. Cal. July 11, 2014), *appeal voluntarily dismissed* (Nov. 17, 2014); *In re MagSafe Apple Power Adapter Litig.*, No. C 09-01911 JW, 2012 WL 12921301, *1 (N.D. Cal. July 6, 2012), *appeal voluntarily dismissed* (Aug. 8, 2012). Ms. Sweeney also appears to be the daughter of "prolific" professional objector Patrick Sweeney. *See Larsen*, 2014 WL 3404531, at *7, n.4; *see also Brown v. Hain Celestial Grp., Inc.*,

---

[3]      Ms. Sweeney is currently subject to an Order to Show Cause as to why her appeal should not be dismissed for failure to pay the docket fee. *See* No. 17-15724, Dkt. No. 2-1.

9

No. 3:11-CV-03082-LB, 2016 WL 631880, *10 (N.D. Cal. Feb. 17, 2016) (stating that Patrick Sweeney is a "'professional' objector[]' and that "courts across the county (including in the Ninth Circuit) have repeatedly turned aside [his] efforts to upend settlements" and collecting cases in which he has objected).

Like the other Appellants, Ms. Sweeney's arguments on appeal are either based on factual inaccuracies or a misunderstanding of the law. For example, Ms. Sweeney argues that the claims administration process is not properly monitored. But, as required by the Settlement Agreement and as explained by Plaintiff-Appellees to the District Court, the claims administration process was and is continually monitored by counsel. Ms. Sweeney also apparently incorrectly believes the settlement is reversionary, and, like Ms. Gaussoin, has incorrectly claimed that certain documents were not available for Class Members to review. She also claims that attorneys' fees are excessive, even though the requested and approved fees are substantially lower than the Ninth Circuit benchmark (the fees comprise less than *14%* of the total settlement amount).

## D.    James Page's Appeal

Mr. Page is represented by attorney Caroline Tucker, one of two attorneys at the firm Tucker Pollard. *See* Dkt. No. 280. According to the firm's website, Ms. Pollard's focus is on litigation of "real estate, business, personal injury and family law cases." http://tuckerpollard.com/tucker.php.

Mr. Page's appeal is, like the others, premised on misstatements of fact and law. For example, Mr. Page argues that the settlement was purportedly reversionary and therefore the claims process was a "boon to Lyft" with a purported 31.3% claims rate. But, again, the settlement is not reversionary, and the claims rate in fact comprises approximately 50% of class members, accounting for approximately 62% of the class settlement share (of which the unclaimed amount will be distributed to class members who do submit claims).[4]  Mr. Page also contends that the *cy pres* beneficiary should be the National Consumer Law Center or National Association of Consumer Advocates. Obviously, this case is an employment case, not a consumer case, and the parties' *cy pres* beneficiary, Legal Aid at Work (formerly known as Legal Aid Society – Employment Law Center), has been repeatedly approved as a *cy pres* beneficiary in wage and hour settlements in courts around the State. *See Boyd v. Bank of America Corp.*, 2014 WL 6473804, at *8 (C.D. Cal. 2014) ("[T]he Legal Aid Society–Employment Law Center is an appropriate cy pres beneficiary. The Legal Aid Society–Employment Law Center provides direct legal services in employment law for low-wage workers in California…This is a workers' rights suit seeking to enforce the wage laws in California, among other claims, to the benefit of workers such as appraisers. Thus, the Court finds the relevant nexus between the underlying statutes and the interests

---

[4]     Mr. Page made this misrepresentation about the claims rate not just to the District Court, but also to this Court. *See* Dkt. No. 3.

of silent class members. The group is not too remote from the Plaintiff class."); *see also Eddings v. Health Net, Inc.*, 2013 WL 169895, at *4 (C.D. Cal. 2013); *Lee v. JPMorgan Chase & Co.*, 2015 WL 12711659, at *3 (C.D. Cal. 2015); *Cordy v. USS-Posco Industries*, 2014 WL 212587, at *3 (N.D. Cal. 2014); *Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453, at *12 (N.D. Cal. 2016), among many others.

## E.    Archie Overton's Appeal

Mr. Overton is an unrepresented Lyft driver who filed a Motion to Intervene and Motion for Reconsideration of the District Court's final approval order after entry of judgment. He did not object to the settlement. Instead, Mr. Overton moved to intervene post-judgment because he sought to secure a restraining order and injunction against Lyft for its alleged operation as "unlawful 'brokers' of passenger transportation" and "unlawful operators of 'motor carriers.'" Dkt. No. 322. He also argued that the settlement was an "illegal contract as Lyft is an unauthorized broker of transportation" and that the settlement "continues to evade [his] right to be exempt from arbitration." *Id.* The Motion for Reconsideration, Dkt. No. 323, was made on essentially the same grounds. Both Motions were denied. Dkt. No. 332.

As was explained to Mr. Overton, the settlement agreement is simply an agreement to resolve disputed claims. It does not in any way sanction Lyft's

activities that Mr. Overton contends are illegal. Nor does the settlement somehow operate as a finding that Lyft's arbitration agreements are enforceable. Moreover, as demonstrated by Mr. Overton's proposed complaint-in-intervention, the relief he seeks has, at best, a tenuous relationship to the misclassification-based claims asserted in this case, and in any event is relief he is free to seek on his own. There was no need for Mr. Overton to take the steps he did in the District Court, and he has now compounded the problem by appealing and thus delaying the disbursement of settlement funds to class members.

***

It is an unfortunate problem in class action litigation that, once fair and adequate class settlements are reached and approved by courts, lone objectors can hold the settlements hostage (potentially for years, given the delays in Ninth Circuit appeals), even when their arguments on appeal are patently incorrect or unfounded. There are limited tools with which parties may combat meritless appeals like these so as to expedite long-awaited relief to class members. One way to advance the interests of the class members is for the Court to expedite and simplify an otherwise lengthy appeals process. There is no reason for there to be five sets of appellate briefs in these appeals (or separate oral arguments, if necessary).

//

13

Moreover, it would be in the interests of justice for these appeals to be expedited so that the nearly 100,000 class members who have submitted claims will not need to wait what could be more than two years to receive their settlement shares from a hard-fought and valuable resolution of this novel and significant case (particularly given the meritless nature of the appeals causing the delay).

Accordingly, Plaintiff-Appellees implore the Court to consolidate the briefing in these appeals, advance the briefing deadlines, and set the appeals for hearing on the earliest practicable date (if the Court determines that a hearing is necessary). Plaintiff-Appellees propose the following schedule:

- Appellants' opening briefs: July 3, 2017;

- Appellees' answering briefs: August 3, 2017;

- Appellants' reply briefs: August 17, 2017;

- Oral argument: if necessary, as soon as possible following briefing.[5]

//

//

//

//

---

[5] None of the Appellants appeared for any of the multiple hearings at the District Court level, so it is unclear why they should benefit from a hearing before this Court. Additionally, Plaintiff-Appellees may move for summary affirmance of the District Court's final approval order and order denying Mr. Overton's motions pursuant to Circuit Rule 3-6, which would also potentially make oral argument unnecessary.

14

Dated: May 25, 2017                    Respectfully submitted,

                                       PATRICK COTTER, ALEJANDRA
                                       MACIEL, and JEFFREY KNUDTSON,
                                       on behalf of themselves and the certified
                                       class

                                       By their attorneys,

                                       /s/ Shannon Liss-Riordan
                                       Shannon Liss-Riordan
                                       LICHTEN & LISS-RIORDAN, P.C.
                                       729 Boylston Street, Suite 2000
                                       Boston, MA  02116
                                       (617) 994-5800

                                       Matthew D. Carlson
                                       LICHTEN & LISS-RIORDAN, P.C.
                                       466 Geary St., Suite 201
                                       San Francisco, CA 94102
                                       (415) 630-2651

# EXHIBIT 1

1                                        Pages 1 - 22

2                    UNITED STATES DISTRICT COURT

3                  NORTHERN DISTRICT OF CALIFORNIA

4     Before The Honorable Vince Chhabria, Judge

5     PATRICK COTTER and ALEJANDRA    )   Case No. 3:13-cv-04065-vc
      MACIEL, on behalf of            )
6     themselves and all others       )
      similarly situated,             )
7                                     )
            Plaintiffs,               )
8                                     )
        v.                            )
9                                     )
      LYFT, INC.,                     )
10                                    )
            Defendant.                )
11    _____ )
                                          San Francisco, California
12                                        Thursday, June 4, 2015

13           TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL
           ELECTRONIC SOUND RECORDING - FTR 10:03-10:35
14
      APPEARANCES:
15
      For Plaintiffs:
16                        Lichten & Liss-Riordan, P.C.
                          729 Boylston Street, Suite 2000
17                        Boston, MA 02116
            BY:           **SHANNON LISS-RIORDAN, ESQ.**
18
                          Carlson Legal Services
19                        100 Pine Street, Suite 1250
                          San Francisco, CA 94111
20          BY:           **MATTHEW DAVID CARLSON, ESQ.**

21    For Defendant:
                          Keker & Van Nest LLP
22                        633 Battery Street
                          San Francisco, CA 94111-1809
23          BY:           **RACHAEL ELIZABETH MENY, ESQ.**

24    Also present telephonically:  Christopher John Morosoff, Esq.

25          *Transcribed by Kelly Polvi, Contract Transcriber*

```
1    THURSDAY, JUNE 4, 2015                          10:03 A.M.

2                        P R O C E E D I N G S

3                            ---000---

4         THE CLERK:  Counsel in Cotter v. Lyft, step forward.

5    Contacting Mr. Morosoff.

6         MS. LISS-RIORDAN:  Good morning, Your Honor.

7         MR. MOROSOFF:  Hello.

8         THE CLERK:  Hi.  Is this Mr. Morosoff?

9         MR. MOROSOFF:  Yeah.

10        THE CLERK:  Okay, I'm calling the case now.

11        MR. MOROSOFF:  Okay.

12        THE CLERK:  Calling case No. 13-cv-04065, Cotter v. Lyft.

13   Counsel, please state your appearances for the record.

14        MS. LISS-RIORDAN:  Good morning, Your Honor.  For the

15   plaintiffs, I'm Shannon Liss-Riordan.  And Matthew Carlson.

16        THE COURT:  Good morning.

17        MS. MENY:  Good morning, Your Honor.  For defendant Lyft,

18   Rachael Meny.

19        THE COURT:  Good morning.

20        And I know we have counsel -- counsel for the plaintiffs

21   in the state court action, Price -- is that what it's

22   called? -- chose not to participate in this hearing and just to

23   listen in by phone.  And I guess that's a little bit strange

24   because this is a motion to enjoin the Price litigation, the

25   state court litigation -- and it's a motion brought by the
```

1  plaintiffs in this case -- and the defendants, in this case,

2  agree that I should enjoin the state court litigation, which

3  would obviously have a -- quite a significant impact on the

4  plaintiff in the state court litigation and their attorneys.

5  But they've, nonetheless, chosen not to participate in the

6  hearing.

7      So -- and I did have a number of questions for them, but

8  maybe, Ms. Liss-Riordan, I can talk them through with you and

9  you can help me figure them out.  I mean, do you -- I guess my

10  first question is do you agree that, in class actions like

11  this, one of the key responsibilities of the district judge is

12  to make sure that plaintiff's lawyers are not putting their own

13  financial interests ahead of the interests of the class of

14  people they propose to represent?

15      MS. LISS-RIORDAN:  Yes, I would say that's a fair

16  statement.

17      THE COURT:  Okay.  And I am concerned about that.  I am

18  concerned about the plaintiff's lawyers in the *Price* action are

19  putting their own financial interests ahead of the interests of

20  the people they propose to represent.  Because I cannot figure

21  out, given the posture that this case is currently in, what

22  benefit they could derive for the people they propose to

23  represent by proceeding with their follow-on class action in

24  state court.

25      The only thing that -- they don't really address that

1    counsel who have a great deal of experience in this type of

2    case would -- to represent the interests of the class would be

3    in the best interest of the class.

4         THE COURT:  Yeah, I mean, I suppose -- there are two

5    different questions.  One is who is more qualified to represent

6    the class, the plaintiff's counsel in this case or plaintiff's

7    counsel in the state court case, and I think, based on what

8    I've seen so far, that's not even a close question; right?

9         It appears that the attorneys who seek to represent the

10   plaintiffs in the state court case do not have the best

11   interests of the proposed class members at heart.  It appears

12   that they have their financial interests at heart; that is, the

13   financial interest of the plaintiff's lawyers.

14        And I think to sort of make the point maybe a little bit

15   more directly than you did, there's not much upside to them

16   proceeding with their case for their proposed clients but there

17   is a significant downside, And the significant downside is that

18   if they proceed a class could be certified in the state court

19   case and summary judgment could be granted in favor of Lyft on

20   behalf of -- with respect to all of the drivers.

21        And so they -- be that -- you know, and maybe, you know,

22   without -- without opining on whether that would be the correct

23   or incorrect outcome ultimately in the case, again, as a

24   district judge, I think I have to be concerned with the rights

25   of the people who are not currently represented in the case but

1    which was not very well drafted, didn't say anything about the

2    named plaintiff's worked schedule.

3         Do you know anything about that?

4         MS. MENY:  I don't, Your Honor, because we literally have

5    not started discovery in that case.  There is actually

6    discovery that they have now served and are attempting to

7    enforce in advance of our June 22nd motion to --

8         THE COURT:  But no discovery has taken place at all,

9    other than this recent discovery request that they have served

10   on you.

11        MS. MENY:  Correct.  They have served discovery, and we

12   have a deadline to object to it that comes up end of next week,

13   but nothing has yet occurred.

14        THE COURT:  Okay.  And you've asked the superior court

15   judge to stay the state court litigation and you have a hearing

16   coming up on that.

17        MS. MENY:  I do.

18        THE COURT:  So I guess -- here's my reaction to the

19   motion to stay -- or the motion to enjoin the superior court

20   litigation, state court litigation.  It's somewhat unusual

21   because we have both parties agreeing that I should do it.  But

22   I think that enjoining state court litigation, that is a very

23   extreme measure, and -- although if I were the superior court

24   judge I would probably stay the state court litigation because

25   this case is much farther along than the state court case, I

1    <u>think there are real concerns about whether the plaintiff's</u>

2    <u>lawyers in the state court case really have the interests of</u>

3    <u>the Lyft drivers at heart.</u>

4         But that's up to the state court judge, and I think it

5    would be -- it would be quite extreme for me, in these

6    circumstances, to enjoin state court litigation, so I'm going

7    to deny that motion.  I'm not going to enjoin the state court

8    litigation.  That motion is denied.

9         You have a couple of other requests.  One is to be

10   appointed interim class counsel, the other is to move up the

11   class certification schedule.

12        Sorry?

13        **MS. LISS-RIORDAN:**  Well, if I just may state, because I

14   thought -- I thought you might say exactly what you just said.

15        **THE COURT:**  Mm-hm.

16        **MS. LISS-RIORDAN:**  Alternatively, as we pointed out, if

17   you were to appoint us interim class counsel, to which there

18   has been no objection by Lyft or the *Price* attorneys in their

19   papers, and if -- and I understand we've also discussed the

20   class certification schedule in this case and that we had the

21   argument before you when you said it, as you said it, and we

22   are content with that schedule, other than the fact that this

23   issue just arose.

24        **THE COURT:**  Right.

25        **MS. LISS-RIORDAN:**  What might address the situation here

## <u>CERTIFICATE OF CONTRACT TRANSCRIBER</u>

I, Kelly Polvi, CSR, RMR, FCRR, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further, that I am not financially nor otherwise interested in the outcome of the action.

Dated June 9, 2015.

_____
Kelly Polvi, CSR #6389, RMR, FCRR
Contract Transcriber

*Kelly Polvi, CSR, RMR, FCRR*
*P.O. Box 1427*
*Alameda, CA 94501*
*(503) 779-7406; kpolvi@comcast.net*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on May 25, 2017, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

This document has also been served via U.S. mail on *pro se* Appellant Kerry Ann Sweeney at the following mailing address, listed on Appellant Sweeney's Notice of Appeal:

> Kerry Ann Sweeney
> 1223 20th Street, Ste. 101
> Santa Monica, CA 90404

This document has also been served via U.S. mail on *pro se* Appellant Archie Overton at the following mailing address, listed on Appellant Overton's Notice of Appeal:

> Archie Overton
> 1986 Washington Ave #A
> San Leandro, CA 94577

> /s/ Shannon Liss-Riordan__
> Shannon Liss-Riordan

Dated: May 25, 2017